# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| **REVERE HOUSING AUTHORITY,** | ) | Civil Action No. |
|  | ) | 18-12654-FDS |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| **MARICEL APARICIO,** | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REMAND

**SAYLOR, J.**

This is an eviction action. Plaintiff Revere Housing Authority has filed a motion to remand, contending that removal of the case was untimely and that this court lacks subject-matter jurisdiction over the case. For the following reasons, the motion will be granted.

**I.     Background**

   **A.     Factual Background**

The facts are set forth as described in the complaint and attached exhibits.[1]

On April 24, 2007, Maricel Aparicio entered into a lease agreement with Revere Housing Authority ("RHA") for a federal housing project unit located at 20 Rose Street in Revere, Massachusetts. (A.R. 13). Aparicio's son, Jeffrey Aparicio, was listed as the only other "authorized occupant" of the unit. (A.R. 13).

Among other things, the lease provided that Aparicio would be required to "properly

---

[1] Aparicio has attached an "administrative record" to her opposition that she contends was "compiled" by RHA. Citations to that record will appear as "A.R." Aparicio has also attached a transcript of her grievance hearing before the RHA. Citations to the transcript will appear as "Tr."

complete an Annual Continued Occupancy Form" that "includ[ed] verification of all facts contained therein." (A.R. 15).

On February 13, 2015, Dean Harris, the Director for Housing Management of RHA, sent Aparicio a letter stating that RHA was "considering terminating [her] lease." (A.R. 10). The letter listed the following reasons: (1) Aparicio had "misrepresented facts on the submission of [her] annual Continued Occupancy Forms . . . in 2014, 2013, 2012 and 2011," including the facts that she had "failed to disclose [] income of [her] son" and had "failed to disclose a significant asset . . . i.e., a condominium unit . . . owned by [her] son"; and (2) because her "son . . . was arrested" and "charged" with multiple crimes in November 2014, including four counts of assault with a dangerous weapon and discharging a firearm within 500 feet of a building. (*Id.*).

The letter further provided that Aparicio and her son had violated the following sections of her lease:

> Section III. A - To live in a peaceful manner respecting the rights of neighbors as to privacy and quiet.
>
> Section III.E - To properly complete an Annual Continued Occupancy Form, including verification of all facts contained therein; and to return to Management within thirty (30) days of its receipt.
>
> Section III.F - To report to management within seven (7) days all increases in income and/or change in the size of the household, and to pay the adjusted rent as provided further in this lease.

(A.R. 11).

The letter informed Aparicio that Harris had scheduled a "private conference" at the RHA office for February 24, 2015, at 10:00 a.m. (*Id.*). It also informed her that she had the "right to request" a "hearing under the grievance procedure" by submitting a request in writing within five days of the conference. (*Id.*).

It appears that the conference was held on February 24, 2015. (A.R. 8). Neither party

2

has provided any details as to what occurred at the conference.

After the February 24 conference, Aparicio apparently next met with RHA, accompanied by her lawyer, on June 25, 2015. (Tr. at 24).[2] She contends that did not hear again from RHA until she received "paperwork to renew her lease" in late December 2015. (Tr. at 26). She also contends that she filled out and returned that paperwork to RHA. (*Id.*).[3]

On January 4, 2016, John L. Greco, the Interim Executive Director of RHA, sent Aparicio a letter titled "30-DAY NOTICE TO QUIT/VACATE FOR VIOLATION OF LEASE." (A.R. 8). The letter stated that the following facts had been "considered and discussed at the private conference held on February 24, 2015":

> 1. That Aparicio "fraudulent[ly]" failed to report the fact that her son had "vacat[ed] the premises because [she] wanted a 2-bedroom unit."
>
> 2. That Aparicio's rent was "based on income," and her failure to report her son's income and assets caused her to have paid less rent than she should have.
>
> 3. That Aparicio or her son had used different social security numbers and names on the paperwork they submitted to RHA than on the paperwork they had submitted to her son's employer, an act that prevented RHA from verifying her son's income and assets.

(A.R. 8-9). The letter stated that it was "therefore the intention of [RHA] to continue to pursue termination of [Aparicio's] tenancy for [the] reasons stated in the letter dated February 13, 2015." (A.R. 9). She was told to vacate her unit within 30 days. (*Id.*).

On January 13, 2016, Aparicio sent a message to Greco requesting a grievance hearing. (A.R. 7). On February 9, 2016, Dora Nakabuye, the Acting Director for Housing Management of RHA, sent a letter to Aparicio informing her that a grievance hearing had been scheduled for

---

[2] Aparicio contends that she and Harris "agreed" at the June 2015 meeting "to settle the dispute" by having Aparicio move to a one-bedroom unit. (Opp. at 3). Aparicio has not provided any evidence of such a settlement agreement.

[3] Aparicio contends, without evidentiary support, that she received a letter from Harris that asked her to renew her lease without reporting her son as a household member and that she did as requested.

3

February 17, 2016. (*Id.*).

Aparicio attended the February 17, 2016 hearing along with a friend and interpreter. Dora Nakabuye presented on behalf of RHA and Cindy White Overton presided over the hearing. (A.R. 3). According to Overton's decision, Aparicio acknowledged that she had kept her son's name on the lease "as a ghost" in order to keep her two-bedroom unit; she also apparently apologized and testified that she knew what she did was wrong. (A.R. 4).

Ultimately, Overton concluded that Aparicio "willfully and purposefully violated her lease and program regulations by repeatedly submitting fraudulent information regarding her son being on her lease, and living in her unit." (A.R. 5). Overton also concluded that Aparicio "has acknowledged and admitted to forging her son's signature on federally required documentation ([the] Continued Occupancy Forms) on more than one occasion, and [to] withholding accurate information from RHA in an attempt to continue to live in and be subsidized for a two-bedroom unit." (*Id.*). Accordingly, Overton upheld RHA's decision to terminate Aparicio's housing assistance. (*Id.*).[4]

On February 24, 2016, RHA Executive Director James L. Milinazzo sent Aparicio a letter stating that "[a]fter consideration of all the relevant information and applicable laws and

---

[4] Aparicio contends that Overton did "not *uphold* [] RHA's decision, but rather reached the complete opposite conclusion." Her contention is based on what she alleges is a material inconsistency in RHA's decision-making process. Essentially, she makes the following argument: that RHA, in its initial February 2015 letter, told her that it sought to terminate her lease because she had failed to disclose the income and assets of her son, who RHA considered a member of her household because he was listed as such on the lease. By contrast, she contends, Overton's February 2016 decision concluded that she had violated her lease by failing to inform RHA that her son had moved out, and thus that she had received a two-bedroom unit when she was only entitled to a one-bedroom unit. She contends that these two conclusions—the first premised on the assumption that her son still lived in the unit, and the second premised on the assumption that he had moved out of the unit—indicates that Overton "terminat[ed] [her] benefits" for the "exact opposite [reason] of what was alleged" by RHA. Doing so, she contends, violated the requirement of 24 C.F.R. § 966.53(c) that a tenant be given adequate notice of the grounds for terminating her tenancy. She also contends that her grievance hearing violated other federal statutes and regulations by not providing an opportunity for her to cross-examine witnesses, not providing her with a "meaningful informal settlement conference focused on informal settlement" as opposed to "formal adjudication," and not holding the hearing within five days of such an informal settlement conference.

4

regulations, [Overton had] determined that the decision of [RHA] to terminate assistance [should be] upheld." (A.R. 1). Overton's decision, dated February 23, 2016, was attached to the letter. (*Id.*).

### B. Procedural Background

On March 11, 2016, Aparicio filed an action seeking review of RHA's decision in Suffolk Superior Court. The complaint appears to have alleged violations of federal laws and regulations governing RHA's grievance procedure as well as violations of Aparicio's civil rights.

On October 3, 2018, the Suffolk Superior Court "allowed" RHA's motion for judgment on the pleadings. On October 4, 2018, the court dismissed the complaint.

On November 27, 2018, RHA served an eviction summons and complaint on Aparicio. On December 10, 2018, RHA filed the eviction summons and complaint with the Chelsea District Court.

On December 29, 2018, Aparicio filed a notice of removal with this court. On January 25, 2019, RHA filed a motion to remand the case to state court.

## II. Analysis

RHA essentially makes two contentions as to why this case should be remanded: (1) because the removal was untimely and (2) because this court lacks subject-matter jurisdiction over the case.

### 1. Whether Removal Was Timely

RHA first contends that the notice of removal was untimely. The removal statute, 28 U.S.C. § 1446(b)(1), provides as follows:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the

defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, which ever period is shorter.

RHA served its eviction summons and complaint on Aparicio on November 27, 2018. It then filed the eviction summons and complaint with the Chelsea District Court on December 10, 2018. Aparicio filed her notice of removal on December 29, 2018.

The dispute between the parties centers on the meaning of the term "initial pleading." Essentially, RHA contends that the eviction summons and complaint it served on Aparicio on November 27 qualifies as a copy of the "initial pleading," and thus that the notice of removal—filed on December 29—was outside the 30-day filing window. Aparicio contends that a complaint cannot be considered an "initial pleading" until it has been filed with a court, and thus that the 30-day clock to file a notice of removal did not begin until RHA actually filed the complaint with the Chelsea District Court on December 10.

"For a document to be regarded as a pleading it must, at the very least, be filed with a court." *Leverton v. AlliedSignal, Inc.*, 991 F. Supp. 481, 484-85 (E.D. Va. 1997). Accordingly, because it had not yet been filed with a court, the complaint served on Aparicio on November 27 was not an initial pleading. The 30-day window to remove under § 1446(b) therefore did not begin to run until RHA filed its complaint with the Chelsea District Court on December 10. Accordingly, because the notice of removal was filed within 30 days of December 10, it was timely under § 1446(b).

### 2. **Whether This Court Has Jurisdiction**

RHA further contends that removal was improper because this court has no subject-matter jurisdiction over the case.

A defendant may remove any civil action over which the federal district court has original jurisdiction. 28 U.S.C. § 1441(a). A district court's original jurisdiction extends, among

6

other things, to claims that arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Whether a claim "arises under" federal law generally depends on an evaluation of the "well-pleaded complaint." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). In the great majority of cases, a suit "arises under the law that creates the cause of action." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 8 (1983) (quotation omitted). However, under the *Smith* doctrine, a case may "arise under" federal law if the state-law right necessarily requires resolution of a substantial question of federal law. *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 201 (1921). A defendant may not remove a case on the basis of a federal defense, but a plaintiff may not defeat removal by failing to plead a necessary federal question. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

The complaint here does not plead a federal cause of action. It alleges that Aparicio violated three sections of her lease by failing to disclose information concerning her son, who was listed on the lease as the unit's other resident.[5] The allegations, therefore—at least on their face—are straightforward breach of contract claims arising under state law.

Aparicio appears to offer three arguments as to why this case "arises under" federal law. The removing party bears the burden of establishing federal jurisdiction. *See BIW Deceived v. Local S6, Indus. Union of Marine and Shipbuilding Workers of America, IAMAW Dist. Lodge 4*, 132 F.3d 824, 830-31 (1st Cir. 1997).

---

[5] Specifically, the complaint alleges that Aparicio "occupies the premises . . . unlawfully and against the right of [RHA], owner of the premises, because [Aparicio]: (1) misrepresented facts on the submission of her annual continued occupancy forms; (2) failed to disclose the income of her son . . . who is listed as a member of the household on the lease and on continued occupancy forms in 2014, 2013, 2012, and 2011; (3) failed to disclose a significant asset held by the household, i.e., a condominium unit . . . " and because Aparicio's "son and household member . . . was arrested following a disturbance . . . and charged with [various serious crimes]." (Complaint at 3).

7

First, Aparicio appears to contend that the grievance hearing process was procedurally deficient and thus that RHA violated two federal regulations promulgated by the Department of Housing and Urban Development (HUD).[6] That response, however valid it may be, is a federal defense, and thus cannot be a ground for removal. *See Franchise Tax Bd.*, 463 U.S. at 14.

Second, Aparicio contends that "this case is purely about federal law" because RHA's allegations arise from its "perception that [she] has violated federal law." Put differently, she contends that the sections of her lease that RHA alleges she violated "are actual HUD housing laws that [RHA] is required to impose on its tenants in federal housing projects." In support of that contention, Aparicio points to a federal statute (42 U.S.C. § 1437(d)(1)(6)) and two federal regulations (24 C.F.R. § 966.4(c)(1) and (2)) that she contends "mandate" the inclusion of the sections of her lease she allegedly violated.

But whether or not RHA is required by federal law (or HUD regulations) to include the relevant sections in its leases for federal housing projects, the sections of the lease themselves cannot be deemed "actual HUD housing laws" or federal laws of any sort. And whether RHA may itself "perceive" that Aparicio has violated federal law is of no matter, as the court must determine not what is in RHA's mind, but rather what is asserted in its complaint.

Third, and finally, Aparicio appears to contend that this case arises under federal law under the *Smith* doctrine. Under that doctrine, a case "might still 'arise under' the laws of the United States," in spite of a complaint that lists only state-law causes of action, "if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd.*, 463 U.S.

---

[6] In particular, Aparicio contends that RHA violated 24 C.F.R. § 966.53(c) and 24 C.F.R. § 966.54.

at 13.⁷. Whether the *Smith* doctrine may be invoked in a particular case depends on whether the federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in a federal court without disrupting the federal-state balance of power." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Those factors must be considered in light of the "totality of the circumstances," *One & Ken Valley Hous. Grp.*, 716 F.3d at 224, and with "common-sense accommodation of judgment to kaleidoscopic situations." *Gully*, 299 U.S. at 117.

> As to that point, Aparicio contends the following:
>
> Compliance with federal law is a substantial issue here because this . . . is a tenancy that was created solely by virtue of federal housing law and HUD regulations. Without federal law, [Aparicio's] tenancy would not exist. Without federal law there would be no federal housing projects in Revere. Without federal law, [Aparicio] would have no entitlement to federal housing subsidies. Without federal law, [RHA] would be free to evict [Aparicio] without compliance with the grievance process or any due process. The issue of household size and total household income (and [Aparicio's] obligation to discuss household issues), as codified by federal law and HUD regulations, is a substantial issue because it is the basis for which the amount of the housing subsidy is determined. So, too, is the statutory grievance procedures for termination of a tenancy in a federal housing project (which exist solely in this federal housing program – not other state or non-governmental tenancies).

(Mem. in Opp. at 13 n.9).

In support, Aparicio cites *Commonwealth of Massachusetts v. V & M Management, Inc.*, 752 F. Supp. 519 (D. Mass. 1990). In that case, the Massachusetts Attorney General brought an action against the owner and operator of a federally-subsidized housing project under Mass. Gen. Laws ch. 93A after inspections of the project revealed "numerous violations of state and federal housing statutes and regulations." 752 F. Supp. at 520. As the court there made clear, the Commonwealth's complaint "delineate[d] specific violations of Massachusetts and federal housing statutes and regulations which, pursuant to the Attorney General's Landlord-Tenant

---

⁷ This principle has been called the "federal ingredient exception." *One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*, 716 F.3d 218, 224 (1st Cir. 2013).

9

Regulations . . . constitute[d] *per se* violations of Chapter 93A." *Id*. Here, by contrast, although the relevant sections of Aparicio's lease may have been modeled on (or even required by) federal statutes and regulations, RHA's complaint is not premised on its ability to prove that Aparicio violated federal law.

In any event, even if RHA's right to relief required resolution of a question of federal law—a conclusion the Court does not reach here—any such question of federal law could not be deemed "substantial." Whether a question is "substantial" depends not on its importance to the parties, but rather its importance to the federal system as a whole. *Gunn*, 568 U.S. at 260. Put simply, although Aparicio makes various contentions as to how federal questions are "substantial" to her case, she offers no indication whatsoever as to how any of those federal questions are substantial or important to the federal system *as a whole*. Nor does it appear she could, as the case does not appear to raise any complex or major interpretative questions of federal law, but rather concerns fact-bound determinations relevant only to her own situation. Aparicio herself concedes that "landlord/tenant matters" such as these "are typically resolved in state court." It is also worth noting that "dispossessory actions" such as this one "are now, and have always been, primarily state court matters" because "[s]tate courts are highly familiar with dispossessory procedure[s], and federal courts are ill-equipped to adjudicate these actions." *Federal Home Loan Mortg. Corp. v. Litano*, 2015 WL 3632334 at * 7 (D. Mass. June 1, 2015) (quoting *Federal Home Loan Mortg. Corp. v. Matassino*, 911 F. Supp. 2d. 1276, 1284 (N.D. Ga. 2012).

Accordingly, Aparicio has not met her burden of establishing that this court has subject-matter jurisdiction over the case. The motion to remand will therefore be granted.

### 3. Attorneys' Fees and Expenses

RHA contends that it is entitled to attorneys' fees and expenses incurred as a result of the improper removal.

Under 28 U.S.C. § 1447(c), "an order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

"Absent unusual circumstances, court may award attorney's fees under § 1447(c) only where the removing party lacked any objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). In other words, courts award costs and fees under § 1447(c) "when the facts are 'so one-sided as to have made remand a foregone conclusion.'" *Toro v. CSX Intermodal Terminals, Inc.*, 199 F. Supp. 3d 320, 325 (D. Mass. 2016).

Put simply, although removal was improper here, and thus that remand is warranted, the facts of this case are not so one-sided as to make remand a foregone conclusion. The complaint, at least arguably, involves federal issues, and therefore the imposition of fees and costs is not warranted.

## IV. Conclusion

For the foregoing reasons, the motion to remand of plaintiff Revere Housing Authority is GRANTED. The case is hereby REMANDED to the Chelsea District Court.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: May 14, 2019  United States District Judge